UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ANGEL KALEY-WOLFE

        Plaintiff,                               Case No.

v.                                                  Hon.

HONORABLE MELANIE STANTON,
KRIS A. RANDALL, and
CAROL STOCKING
in their individual and official capacities,

        Defendants.

_____

**NICHOLAS ROUMEL (P37056)**
**NACHT & ROUMEL, P.C.**
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com

_____

# COMPLAINT AND JURY DEMAND

Plaintiff states her complaint as follows:

### Preliminary Statement

Plaintiff Angel Kaley-Wolfe was an employee of the 13th Circuit Court, most recently as a judicial assistant for Judge Melanie Stanton, who was fired after nearly 14 years of loyal service, in violation of her rights under the Rehabilitation Act of 504, the Persons with Disabilities Civil Rights Act ("PWDCRA"), and the Family Medical Leave Act ("FMLA").

**Parties, Jurisdiction & Venue**

1. Plaintiff, Angel Kaley-Wolfe ("Ms. Kaley-Wolfe" or "Plaintiff"), resides in Traverse City, Grand Traverse County, Michigan.

2. The events described in this lawsuit arise out of Plaintiff's employment with the 13th Circuit Court and took place primarily in Grand Traverse County.

3. The 13th Judicial Circuit Court has principal offices in Traverse City, Grand Traverse County, Michigan, and is the court of original jurisdiction for felonies and general civil cases with an amount in controversy over $25,000 and/or equitable relief. It serves the counties of Antrim, Grand Traverse, and Leelanau Counties. See, e.g., MCL 600.601 and MCL 600.514. It is a Michigan constitutionally created branch of state government. [Art. VI, § 1, § 6, § 8] It is not a party to this action.

4. The 13th Judicial Circuit Family Division for Grand Traverse County is the court of original jurisdiction for probate and family law cases in Grand Traverse County, with principal offices in Traverse City. It is not a party to this action.

5. Grand Traverse County is the *de facto* employer and fiscal agent for employees of the 13th Judicial Circuit Family Division. It is a Michigan constitutionally created branch of state government. [Art. X] Pursuant to the Michigan constitution, contract, and custom, it handles matters such as payroll and fringe benefits for employees of the 13th Judicial Circuit Family Division. It is not a party to this action.

6. Defendant, the Honorable Melanie Stanton ("Judge Stanton" or "Defendant Stanton"), is the Family and Probate Judge for the 13th Judicial Circuit Family Division. She is sued in her individual capacity, except as to the FMLA claim.

7. Defendant, Kris A. Randall ("Randall" or "Defendant Randall"), is the Family Division Administrator for the 13th Judicial Circuit for Grand Traverse County and is sued in her individual capacity, except as to the FMLA claim.

8. Defendant Carol Stocking was the Administrator for the 86th District Court for Grand Traverse, Antrim and Leelanau Counties, but also assumed various personnel and supervisory functions over Ms. Kaley-Wolfe. She is sued in her individual capacity, except as to the FMLA claim.

9. The federal claims asserted in this lawsuit are based on violations of 42 U.S.C. § 1983. The state law claim asserted in this lawsuit is violation of Michigan's Persons With Disabilities Civil Rights Act 37.1101, *et seq.* [MPWDCRA].

10. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state law claims pursuant to 28 U.S.C. § 1367.

11. Venue lies within the Western District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district in which the events giving rise to Plaintiff's claims took place.

12. The amount in controversy exceeds $75,000.

**General Allegations**

13. Ms. Kaley-Wolfe was employed since 2002 in a variety of capacities for the entities listed above, most recently as a Judicial Assistant for the 13th Circuit Court Family division, Grand Traverse County, under the supervision of Judge Stanton, commencing in January, 2015.

14. In summary, her job entailed conducting research and related matters to assist the Judge in her caseload.

15. Ms. Kaley-Wolfe was qualified for her position given her years of experience holding various positions with the court, including having obtained a law degree and becoming a member of the Michigan bar in 2010.

16. Plaintiff was originally hired as an office specialist with the 86th District Court, supervised by Defendant Stocking, with Department Head Judge Michael Haley, commencing December 30, 2002.

17. In May, 2004, she passed her Certified Electronic Recorder exam and became a certified CER (#7489). She was promoted to the position of Court Recorder in the 86th District Court, still supervised by Defendant Stocking, with Department Head Judge Michael Haley. Her new position commenced June 10, 2004.

18. Plaintiff is a disabled individual. Before coming to work for the courts, she had surgery in 2000 and residual pain, with flare-ups approximately twice a year that last 2-3 weeks. While she was generally able to work through the pain, she continued to treat with various physicians looking for a solution, including testing at the Mayo Clinic.

19. In May, 2007, she sought leave to go on Short Term Disability ("STD") due to pain and inability to tolerate a full work day beyond four hours.

20. Commensurate with her STD request, she applied for leave under the Family Medical Leave Act ("FMLA"), as supported by her physician.

21. She was granted half-time leave commencing May 30, 2007 and began a part-time work schedule from 8-12 PM. However, Ms. Kaley-Wolfe's medical condition did not permit continuation of this schedule. She was diagnosed with pelvic pain, uterine fibroids, and dysmenorrhea. She underwent major surgery (total abdominal hysterectomy and a left salpingo-oophorectomy, which is removal of ovary and fallopian tube).

22. After the surgery, she was off work full time effective June 14, 2007, and approved for STD, for approximately six weeks. She was cleared to work without restrictions July 25, 2007.

23. Ms. Kaley-Wolfe maintained regular, full-time employment without serious incident for the next five years. Although her disabilities continued to affect her, she ably performed the duties of her position and worked through the pain for the benefit of her employer.

24. Effective November 27, 2012, she applied for and was approved for STD and FMLA leave, supported by her physician, with a return to work date of December 11, 2012, for purposes of surgery.

25. On May 21, 2013, Ms. Kaley-Wolfe transferred to a probation officer position with the 86th District Court, under the supervision of Carol Stocking.

26. She was off work from October 7 – November 22, 2013, again on STD and FMLA, supported by her physician, suffering from considerable pain, and accompanied by other symptoms, as of yet diagnosed. She was examined at the Mayo Clinic.

27. Plaintiff continued to suffer health problems. On January 3, 2014, she was approved for STD through February 3, 2014.

28. Effective February 6, 2014, Ms. Kaley-Wolfe went on approved FMLA leave, supported by her physician, for continued gastrointestinal issues. She had surgery on March 27, 2014 for removal of part of her stomach, after lesser therapy measures proved inadequate.

29. Her physician recommended 8 weeks off for recovery, in a letter to Grand Traverse County Human Resources dated April 4, 2014.

30. She was approved to return to work part-time on May 12, 2014, and full time on May 26, 2014.

31. Despite these serious medical issues, her STD application for the time she was off was initially denied by the third-party administrator Lincoln Financial Group, though it was eventually approved.

32. Ms. Kaley-Wolfe continued to admirably perform the duties of her position, and was once again hired to take on a new responsibility, being hired on July 28, 2014 as an office coordinator and magistrate judge at the 86th District Court, under the supervision of Defendant Stocking.

33. After being in this position for several months, in December, 2014, Plaintiff applied for a position as Defendant Stanton's Judicial Assistant. She was hired into this position effective January 20, 2015. She was initially under the supervision of Diane Conklin and Defendant Stanton as Department Head.

34. Shortly after Plaintiff took this position, Ms. Conklin was replaced as Family Court Administrator by Defendant Randall, sometime in the spring of 2015.

35. Throughout the previous 13 years of employment, Plaintiff always received her requested accommodations for her disabilities, of occasional leave, and a flexible schedule for appointments and to otherwise accommodate the symptoms of her disabilities.

36. After Randall arrived, these accommodations were met with hostility. On July 16, 2015, Defendant Randall, the Family Court Administrator (along with Amanda Flowers, the Probate Register), provided Plaintiff with a "counseling memo" regarding "attendance problems." The memo included what appeared to be examples of deficient attendance.

37. The examples provided included sick days, doctor appointments, days worked through the lunch hour (i.e. working an extra hour during the work day), coming in early at 7 AM, working from home, and coming to work at 8:15 AM instead of 8:00 AM.

38.     With this memo, Plaintiff felt she was singled out due to her medical condition, and the objective evidence supports that conclusion, given the inclusion of sick days and doctor appointments in the counseling memo.

39.     The memo stated that "expected performance" would be for Ms. Kaley-Wolfe to work from 8 AM – 5 PM, Monday through Friday; not be tardy *(sic)* more than three times a month; and complete a "Flex Time Request Form" every time "flex time may be accrued," and that working through lunch would not be considered flex time; and notify Defendant Randall of sick time prior to the start of a work day.

40.     The memo purported to calculate Ms. Kaley-Wolfe's flex time balance and concluded that over the previous nearly half-year, she "owed" 6.75 hours to the court. This did not include approximately ten days that Defendant Randall noted where Ms. Kaley-Wolfe worked through lunch, but was not given credit for the hour worked under Randall's definition of "flex time." With that time included, Ms. Kaley-Wolfe more than met her hours.

41.     For the previous 13 years, Plaintiff was always provided "flex time" as long as she worked her allotment of full time hours, and other employees were provided flex time, and the ability to accrue flex time by working through lunch, without penalty or threats to their employment.

42.     Plaintiff also explained to Defendants that she didn't always punch in, as was her custom, instead going straight to her office. Nonetheless, in order to appease her employers, she apologized for these attendance "issues" after being given this counseling memo.

43.     Approximately 30 days after the counseling memo, Randall informed Ms. Kaley-Wolfe to compliment her on being compliant with attendance issues.

44.     Around August, 2015, and on top of her many other previous medical issues and disabilities, Ms. Kaley-Wolfe received a new diagnosis of breast cancer ("malignant neoplasm of unspecified site of left breast"). Surgery commenced to remove the malignancy.

45.     On October 22, 2015, Ms. Kaley-Wolfe sought short term disability and FMLA for the purpose of having a unilateral mastectomy of her left breast, with reconstructive surgery. Her applications for STD and FMLA were approved, with an expected return to work date of December 21, 2015.

46.     Upon notifying Defendant Stanton, the Judge told Plaintiff that she should have both breasts "cut off," as they would "only be in the way" when she got older.

47.     By way of background and context, Judge Stanton is a registered nurse, but paradoxically expresses little tolerance for sickness and disease. For example, when a prosecutor requested an adjournment because a witness was not available for health reasons, Judge Stanton pressed the prosecutor on the specific health issue, and opined that the witness was a "wimp" because he wouldn't be ready to testify two weeks after open heart surgery.

48.     She also provided unsolicited medical advice and opinions about employees' health problems, not just the Plaintiff. The Judge once told another employee with a medical issue who was planning to take leave, "Six weeks off? You should come back in two."

49.     Despite Judge Stanton's opinion to Plaintiff that she should have both breasts "cut off," Ms. Kaley-Wolfe instead followed the advice of her physicians, and had surgery on the left breast only. She eventually returned to work, as approved by her physician, on December 21, 2015, without restrictions.

50.     In the spring of 2016, Ms. Kaley-Wolfe had followup surgery to complete reconstruction of her left breast, and for reconstructive/reductive surgery on her right breast so

that it would "match" the left. She went on approved FMLA leave, supported by her physician, on May 6, 2016, through June 27, 2016.

51. Upon giving Defendant Stanton notice of this new leave, the Judge expressed surprise and disapproval that Ms. Kaley-Wolfe was again having surgery, as well as criticizing Plaintiff's choice of hospitals.

52. At no time did Defendants Stanton, Randall or Stocking ever express any sympathy or concern for Plaintiff's unfortunate medical issues.

53. After six weeks off due to her cancer and related post-cancer surgery, Ms. Kaley-Wolfe was unceremoniously fired on the very day she returned to work, within minutes of resuming duties. She was called into a meeting by Defendant Randall and given a memo, dated June 27, 2016, from Defendants Stanton, Randall, and Stocking.

54. The memo cited attendance problems and listed allegedly deficient days of attendance, including "worked until 8:15 PM," several instances of earned "comp" time; approved vacation and personal leave time; approved holidays; working through lunch (such as 8/25/15, "in at 9:30 AM; no lunch left 6:15 PM," an 8 hour, 45-minute work day); and sick time taken with advance notice. It was not explained why these issues were considered to be deficiencies.

55. The memo also included and incorporated the July 16, 2015 counseling memo concerning attendance, and included a short paragraph about alleged performance issues in research and drafting, of which Ms. Kaley-Wolfe had no prior notice or warning.

56. Ms. Kaley-Wolfe was illegally fired in contravention of her rights as a disabled employee, who took approved medical leaves, as set forth more fully below.

**Legal Allegations**

**COUNT I – VIOLATION OF SECTION 504 OF THE REHABILITATIVE ACT (DISCRIMINATION) – ALL DEFENDANTS**

57. Plaintiff's medical conditions qualify as an actual disability for purposes of Section 504 of the Rehabilitative Act of 1973 (Section 504) in that these conditions substantially limit one or more major life activities. [29 USC § 701, 34 CFR 104.3(j)(1)(i)]

58. The 13th Circuit Court, and Grand Traverse County, were recipients of financial assistance from the United States government.

59. Plaintiff was excluded from participation in, and/or denied the benefits of, her employment, solely because of her disabilities, when Defendants denied her the benefits of, and/or subjected her to discrimination regarding her employment with the Court, culminating in the termination of her employment.

60. Defendants so excluded and discriminated against Plaintiff as described above, under color of state law and in their individual capacities.

61. Plaintiff has been damaged by these actions as described herein and below.

**COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATIVE ACT (FAILURE TO ACCOMMODATE) – ALL DEFENDANTS**

62. Defendants were adequately informed of Plaintiff's disabilities and requests for accommodation by way of approved leave, sick days, personal days, and/or flex time.

63. Defendants had the means to accommodate Plaintiff's disabilities, without undue hardship.

64. Defendants failed to reasonably accommodate Plaintiff.

65. Such failure to accommodate has directly and proximately caused Plaintiff great damages, as set forth herein and below.

### COUNT III – VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT – ALL DEFENDANTS

66. Plaintiff is a disabled person as defined in the Michigan Persons with Disability Civil Rights Act MCLA 37.1101, *et seq.* [MPWDCRA], because at all relevant times she had a disability that:

   a. Substantially limits one or more of her life activities; and

   b. With or without reasonable accommodations, was unrelated to her ability to perform her job.

67. Plaintiff's disability was recognized by and known to the Defendants, and was one of the factors that contributed to the adverse actions they took against her.

68. These adverse actions, including but not limited to subjecting Plaintiff to discrimination and terminating her employment, constituted discrimination in violation of the MPWDCRA.

69. Such discrimination has damaged Plaintiff as described herein and below.

### COUNT IV – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - ALL DEFENDANTS

70. Defendant was an employer under the FMLA.

71. Plaintiff was an eligible employee under the FMLA, in that she had a serious health condition and was otherwise entitled to take FMLA leave.

72. The medical conditions described above constituted a serious health condition.

73. Plaintiff gave Defendants appropriate notice of these conditions, and followed up by making requests for leave under the FMLA as described above.

74. Defendant interfered with Plaintiff's right to leave by discharging her immediately upon return from her last FMLA leave.

75. Plaintiff never had any issues of concern with her FMLA leaves for her serious medical conditions, until being supervised by Defendants.

76. As a result of Defendants' FMLA interference, Plaintiff was damaged as described herein and below.

### COUNT V:  FAMILY AND MEDICAL LEAVE ACT RETALIATION – ALL DEFENDANTS

77. Plaintiff engaged in statutorily protected activity by requesting and taking protected leave as defined by the FMLA.

78. After learning of Plaintiff's protected activity, Defendants discharged Plaintiff by terminating her employment for taking protected leave as defined by the FMLA.

79. This course of conduct was a willful violation of the FMLA.

80. As a result of Defendants' violations of the FMLA, Plaintiff suffered damages as described herein and below.

### Damages

81. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages exceeding $75,000, as follows:

    a. *Economic Damages* – lost wages, lost earning opportunity, lost value of benefits, attorney fees, incidental and consequential damages.

      b.    *Non-Economic Damages* – mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, harm to professional reputation, and disruption of her peace of mind as a result of Defendants' unlawful conduct, to the extent that any reasonable person would have suffered under like circumstances.

82. Defendants' conduct was willful, without compassion for someone who suffered serious medical conditions, and arguably cruel and inhumane when they fired her upon return from her second breast cancer surgery.

83. After being fired, Plaintiff has made a good faith effort to mitigate her damages, and has found employment, though not as an attorney and for less compensation and benefits than she had earned with the Court.

## Jury Demand

Plaintiff demands a jury trial.

## RELIEF REQUESTED

*W H E R E F O R E*   Plaintiff requests this honorable court grant her:

    a.    in excess of $75,000 damages against Defendants (on counts I - III), as warranted by the law and the proofs, including:

        i.    economic and non-economic damages as described above;

        ii.    the greatest possible combination of non-economic and exemplary damages;

        iii.    punitive or special damages as permitted by law;

    b.    costs and pre- and post- judgment interest as permitted by law;

    c.    attorney fees as permitted by law;

    d.    injunctive and/or prospective relief, as permitted by law and equity, including but not limited to reinstatement, including but not limited to Defendants' continuing violations of her FMLA self-care rights. [See, e.g., Diaz v. Michigan Dept. of Corrections, 703 F3d 956, 960 (6th Cir 2013) and *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908)]

    e.    declaratory relief;

    f.    other remedies as are just, appropriate, and permitted by law or equity.

Respectfully submitted,

NACHT & ROUMEL, P.C.

*s/Nicholas Roumel*

Nicholas Roumel (P37056)
Attorney for Plaintiff

September 18, 2017