UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ANGEL KALEY-WOLFE,
                Plaintiff,

v                                 Case No. 1:17-cv-00842
                                 Hon.  Paul L. Maloney

HONORABLE MELANIE STANTON,
KRIS A. RANDALL, and
CAROL STOCKING,
in their individual and official capacities,
                Defendants.

_____/

| | |
|---|---|
| NACHT & ROUMEL, P.C. | JOHNSON, ROSATI, |
| By:  Nicholas Roumel (P37056) | SCHULTZ & JOPPICH, P.C. |
| Attorney for Plaintiff | By:  Laura S. Amtsbuechler (P36972) |
| 101 N. Main Street, Ste. 555 | Attorney for Defendants |
| Ann Arbor, MI 48104 | 27555 Executive Drive, Suite 250 |
| (734) 663-7550 | Farmington Hills, MI  48331 |
| nroumel@nachtlaw.com | (248) 489-4100/Fax:  (248) 489-1726 |
| | lamtsbuechler@jrsjlaw.com |

_____/

### DEFENDANTS' PARTIAL ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND RELIANCE UPON JURY DEMAND

      Defendants, through their attorneys, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C.,

submit the following in Partial Answer to Plaintiff's First Amended Complaint, stating as follows:

### RESPONSE TO PRELIMINARY STATEMENT

      Plaintiff's Preliminary Statement is apparently intended to be outside the formal

allegations in Plaintiff's Complaint and not intended to require a response.  Ms. Kaley-Wolfe was

a Judicial Assistant working for Judge Melanie Stanton, and also performed work as a

Magistrate for the District Court.  Ms. Kaley-Wolfe's employment was terminated for legitimate

business reasons.  Defendants deny Plaintiff's allegation that the termination of her employment

violated her rights under any law.

## PARTIES, JURISDICTION & VENUE

1.     Plaintiff, Angel Kaley-Wolfe ("Ms. Kaley-Wolfe" or "Plaintiff"), resides in Traverse City, Grand Traverse County, Michigan.

**ANSWER:**

In answer to Paragraph 1, Defendants admit, upon information and belief.

2.     The events described in this lawsuit arise out of Plaintiff's employment with the 13th Circuit Court and took place primarily in Grand Traverse County.

**ANSWER:**

In answer to Paragraph 2, Defendants admit that Plaintiff was employed as a Judicial Assistant for the Probate Family Court and as a Magistrate for the District Court and neither admit nor deny the remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

3.     The 13th Judicial Circuit Court has principal offices in Traverse City, Grand Traverse County, Michigan, and is the court of original jurisdiction for felonies and general civil cases with an amount in controversy over $25,000 and/or equitable relief. It serves the counties of Antrim, Grand Traverse, and Leelanau Counties. See, e.g., MCL 600.601 and MCL 600.514. It is a Michigan constitutionally created branch of state government. [Art. VI, § 1, § 6, § 8] It is not a party to this action.

**ANSWER:**

In answer to Paragraph 3, Defendants admit that Plaintiff's allegations regarding the jurisdiction and the location of the 13th Judicial Circuit Court are accurate. Defendants deny Plaintiff's allegation that the Circuit Court is not a party to this action for the reason that this is untrue insofar as Plaintiff has alleged "official capacity" claims against all Defendants. See *Kentucky v Graham*, 473 US 159 (1985).

4.     The 13th Judicial Circuit Family Division for Grand Traverse County is the court of original jurisdiction for probate and family law cases in Grand Traverse County, with principal offices in Traverse City. It is not a party to this action.

**ANSWER:**

In answer to Paragraph 4, Defendants admit that Plaintiff's allegations regarding the Family and Probate Courts' jurisdiction and location are true.  Defendants deny Plaintiff's allegation that the Family Division of the Circuit Court is not a party to this action for the reason that this is untrue insofar as Plaintiff has alleged "official capacity" claims against all Defendants. See *Kentucky v Graham*, 473 US 159 (1985).

5.     Grand Traverse County is the *de facto* employer and fiscal agent for employees of the 13th Judicial Circuit Family Division. It is a Michigan constitutionally created branch of state government. [Art. X] Pursuant to the Michigan constitution, contract, and custom, it handles matters such as payroll and fringe benefits for employees of the 13th Judicial Circuit Family Division. It is not a party to this action.

**ANSWER:**

In answer to Paragraph 5, Defendants deny Plaintiff's allegation that Grand Traverse County is the *de facto* employer and fiscal agent for employees of the 13th Judicial Circuit Family Division, for the reason that this allegation is untrue.  Defendants admit that the County handles matters such as payroll, human resources and fringe benefits for employees of the 13th Judicial Circuit Family Division and further admit that Plaintiff has not named Grand Traverse County as a party to this action.  Defendants neither admit nor deny any remaining allegations and thereby leave Plaintiff to her proofs.

6.     Defendant, the Honorable Melanie Stanton ("Judge Stanton" or "Defendant Stanton"), is the Family and Probate Judge for the 13th Judicial Circuit Family Division.

**ANSWER:**

In answer to Paragraph 6, Defendants admit that the Honorable Melanie Stanton is the Family and Probate Judge for the 13th Judicial Circuit Family Division.

7.      Defendant, Kris A. Randall ("Randall" or "Defendant Randall"), is the Family Division Administrator for the 13th Judicial Circuit for Grand Traverse County.

**ANSWER:**

In answer to Paragraph 7, Defendants admit this allegation.

8.      Defendant Carol Stocking was the Administrator for the 86th District Court for Grand Traverse, Antrim and Leelanau Counties, but also assumed various personnel and supervisory functions over Ms. Kaley-Wolfe.

**ANSWER:**

In answer to Paragraph 8, Defendants admit that Carol Stocking was, and is, the Administrator for the 86th District Court and at certain times had various personnel and supervisory functions over Plaintiff. Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations due to the general nature of those allegations, and therefore leave Plaintiff to her proofs.

9.      The federal claims asserted in this lawsuit are based on violations of Section 504 of the Rehabilitative Act of 1973, 29 USC § 701, 34 CFR 104.3(j)(1)(i) ["Section 504"], and Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (1994) ["FMLA"]. The state law claim asserted in this lawsuit is violation of Michigan's Persons With Disabilities Civil Rights Act 37.1101, *et seq.* ["MPWDCRA"].

**ANSWER:**

In answer to Paragraph 9, Defendants deny violation of state or federal law as alleged

for the reason that the allegations are untrue. Defendants neither admit nor deny Plaintiff's intended pleadings, as they speak for themselves. Defendants deny that Plaintiff has viable claims as more specifically addressed in this Answer and Affirmative Defenses.

10.     This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**

In answer to Paragraph 10, Defendants do not dispute Plaintiff's allegation that this Court has subject matter jurisdiction over federal claims, and that this Court may take pendent jurisdiction over the state law claim alleged.  Defendants deny that Plaintiff has viable federal claims for the reasons that these allegations are untrue.

11.     Defendants Stanton, Randall, and Stocking are sued in their official capacities only as to counts I and II, and in their official and individual capacities as to Counts III-V. It is acknowledged that *Mitchell v. Chapman*, 343 F. 3d 811 (6th Cir 2003) holds that there is no individual liability for public employers under the Family Medical Leave Act, Counts IV and V. Plaintiff respectfully asserts that there is a split of circuit authority on this point, and wishes to preserve her argument that *Mitchell v. Chapman* was wrongly decided.

**ANSWER:**

In answer to Paragraph 11, Defendants neither admit nor deny Plaintiff's allegations regarding her intended pleadings for the reason that these require no response and the pleadings speak for themselves.  In answer to Plaintiff's allegation regarding individual liability under the Family Medical Leave Act, as alleged in Counts IV and V, Defendants deny Plaintiff's allegation that there is a split of authority on this point.  The Sixth Circuit case of *Mitchell v Chapman*, 343 F3d 811 (6th Cir. 2003) is clearly determinative, and Defendants have accordingly filed a partial Motion for Summary Disposition on this issue.  Defendants further

assert that Plaintiff has no claim for money damages against Defendants in their official capacity on her Family Medical Leave Act claim for the reason that her official capacity claims are the equivalent of suits against the entity and money damage claims on the FMLA claim are barred by Eleventh Amendment immunity. Defendants further deny that Plaintiff has viable "official capacity" claims against Defendants Stocking or Randall for the reason that these Defendants are not responsible for directing or setting policy for the Courts.

12.     Venue lies within the Western District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district in which the events giving rise to Plaintiff's claims took place.

**ANSWER:**

In answer to Paragraph 12, Defendants do not dispute Plaintiff's allegation that venue lies within the Western District of Michigan.

13.     The amount in controversy exceeds $75,000.

**ANSWER:**

In answer to Paragraph 13, Defendants deny the allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leaves Plaintiff to her proofs.

## GENERAL ALLEGATIONS

14.     Ms. Kaley-Wolfe was employed since 2002 in a variety of capacities for the entities listed above, most recently as a Judicial Assistant for the 13th Circuit Court Family division, Grand Traverse County, under the supervision of Judge Stanton, commencing in January, 2015.

**ANSWER:**

In answer to Paragraph 14, Defendants admit this allegation.  Defendants affirmatively state that Plaintiff was also working as a Magistrate for the District Court prior to termination of

her employment.

15.   In summary, her job entailed conducting research and related matters to assist the Judge in her caseload.

**ANSWER:**

In answer to Paragraph 15, Defendants deny the allegations for the reason that they are untrue as so generally stated.  Defendants affirmatively state that Plaintiff's job description as Judicial Assistant is specifically set forth in the Judicial Assistant job description attached as Exhibit A.  Defendants further affirmatively state that Plaintiff's job duties as Magistrate for the District Court were separate and distinct from the Judicial Assistant job duties for the Family Court.

16.   Ms. Kaley-Wolfe was qualified for her position given her years of experience holding various positions with the court, including having obtained a law degree and becoming a member of the Michigan bar in 2010.

**ANSWER:**

In answer to Paragraph 16, Defendants admit that Plaintiff had a law degree, and that she had the education and experience which should qualify her for the Judicial Assistant position.  Defendants deny Plaintiff's allegation that Plaintiff was otherwise "qualified" for the reason that the allegations are untrue. Defendants further deny that Plaintiff had "years of" prior experience with the Family Court or the Probate Court.

17.   Plaintiff was originally hired as an office specialist with the 86th District Court, supervised by Defendant Stocking, with Department Head Judge Michael Haley, commencing December 30, 2002.

**ANSWER:**

In answer to Paragraph 17, Defendants admit this allegation.

18.     In May, 2004, she passed her Certified Electronic Recorder exam and became a certified CER (#7489). She was promoted to the position of Court Recorder in the 86th District Court, still supervised by Defendant Stocking, with Department Head Judge Michael Haley. Her new position commenced June 10, 2004.

**ANSWER:**

In answer to Paragraph 18, Defendants admit this allegation.

18.     Plaintiff is a disabled individual. Before coming to work for the courts, she had surgery in 2000 and residual pain, with flare-ups approximately twice a year that last 2-3 weeks. While she was generally able to work through the pain, she continued to treat with various physicians looking for a solution, including testing at the Mayo Clinic.

**ANSWER:**

In answer to Paragraph 18 [sic], Defendants deny Plaintiff's allegation that she is a disabled individual for the reason that this allegation is untrue.  Defendants neither admit nor deny the remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs. Defendants affirmatively state, upon information and belief, that none of the named Defendants had access to Plaintiff's medical information, disability information or previous applications for Family Medical Leave, other than as may have been shared by Plaintiff.  The allegations contained within Paragraph 18, and the many paragraphs which follow in this Complaint relating to Plaintiff's Family Medical Leave, Short Term Disability, and medical condition are answered on information and belief using information available to Defendants only after the filing of this lawsuit.

19.     In May, 2007, she sought leave to go on Short Term Disability ("STD") due to pain and inability to tolerate a full work day beyond four hours.

**ANSWER:**

In answer to Paragraph 19, Defendants admit that Plaintiff sought to go on Short Term Disability leave in May of 2007 and neither admit nor deny the remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

20.     Commensurate with her STD request, she applied for leave under the Family Medical Leave Act ("FMLA"), as supported by her physician.

**ANSWER:**

In answer to Paragraph 20, Defendants, upon information and belief, admit this allegation as it pertains to 2007.

21.     She was granted half-time leave commencing May 30, 2007 and began a part-time work schedule from 8-12 PM. However, Ms. Kaley-Wolfe's medical condition did not permit continuation of this schedule. She was diagnosed with pelvic pain, uterine fibroids, and dysmenorrhea. She underwent major surgery (total abdominal hysterectomy and a left salpingo-oophorectomy, which is removal of ovary and fallopian tube).

**ANSWER:**

In answer to Paragraph 21, Defendants admit, upon information and belief, that Plaintiff was granted Family Medical Leave beginning May 30, 2007 and neither admit nor deny all the remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

22.     After the surgery, she was off work full time effective June 14, 2007, and approved for STD, for approximately six weeks. She was cleared to work without restrictions July 25, 2007.

**ANSWER:**

In answer to Paragraph 22, Defendants admit, upon information and belief, that Plaintiff was off work full time for a period of time in June and July of 2007, and that she returned to work on July 26, 2007. Defendants neither admit nor deny all the remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

23.     Ms. Kaley-Wolfe maintained regular, full-time employment without serious incident for the next five years. Although her disabilities continued to affect her, she ably performed the duties of her position and worked through the pain for the benefit of her employer.

**ANSWER:**

In answer to Paragraph 23, Defendants admit that Plaintiff remained employed with the Grand Traverse courts from 2007 through 2012. Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

24.     Effective November 27, 2012, she applied for and was approved for STD and FMLA leave, supported by her physician, with a return to work date of December 11, 2012, for purposes of surgery.

**ANSWER:**

In answer to Paragraph 24, Defendants admit, upon information and belief, that Plaintiff filled out a request for a leave of absence under the Family Medical Leave Act and as disability leave to begin on November 27, 2012. Defendants further admit that the submitted form stated that the request was for surgery, and that the stated expected return to work date was December 11, 2012. Defendants neither admit nor deny all remaining allegations for lack of

knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

25.     On May 21, 2013, Ms. Kaley-Wolfe transferred to a probation officer position with the 86th District Court, under the supervision of Carol Stocking.

**ANSWER:**

In answer to Paragraph 25, Defendants admit this allegation.

26.     She was off work from October 7 – November 22, 2013, again on STD and FMLA, supported by her physician, suffering from considerable pain, and accompanied by other symptoms, as of yet diagnosed. She was examined at the Mayo Clinic.

**ANSWER:**

In answer to Paragraph 26, Defendants admit, upon information and belief, that Plaintiff applied for, and was granted, Family Medical Leave and Short Term Disability at different times. Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

27.     Plaintiff continued to suffer health problems. On January 3, 2014, she was approved for STD through February 3, 2014.

**ANSWER:**

In answer to Paragraph 27, Defendants neither admit nor deny Plaintiff's allegation that she continued to suffer health problems for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs. Defendants further answer Paragraph 27 and admit, upon information and belief, that Plaintiff submitted an application for a leave of absence to begin January 3, 2014 to take as Short Term Disability Leave and Family Medical Leave.  Defendants neither admit nor deny all remaining

allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

28.     Effective February 6, 2014, Ms. Kaley-Wolfe went on approved FMLA leave, supported by her physician, for continued gastrointestinal issues. She had surgery on March 27, 2014 for removal of part of her stomach, after lesser therapy measures proved inadequate.

**ANSWER:**

In answer to Paragraph 28, Defendants admit, upon information and belief, that Plaintiff's application for Family Medical Leave filed on February 6, 2014 was approved on that date and neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

29.     Her physician recommended 8 weeks off for recovery, in a letter to Grand Traverse County Human Resources dated April 4, 2014.

**ANSWER:**

In answer to Paragraph 29, Defendants admit, on information and belief, that Plaintiff's doctor authored a letter dated April 4, 2014 which recommended six weeks of therapy and advised that she would be off work until May 27, 2014 for recovery.  Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

30.     She was approved to return to work part-time on May 12, 2014, and full time on May 26, 2014.

**ANSWER:**

In answer to Paragraph 30, Defendants admit upon information and belief that Plaintiff submitted a doctor's note dated May 7, 2014 regarding return to work, which is not fully legible.

Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

31.    Despite these serious medical issues, her STD application for the time she was off was initially denied by the third-party administrator Lincoln Financial Group, though it was eventually approved.

**ANSWER:**

In answer to Paragraph 31, Defendants neither admit nor deny the allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

32.    Ms. Kaley-Wolfe continued to admirably perform the duties of her position, and was once again hired to take on a new responsibility, being hired on July 28, 2014 as an office coordinator and magistrate judge at the 86th District Court, under the supervision of Defendant Stocking.

**ANSWER:**

In answer to Paragraph 32, Defendants admit that Plaintiff became classified in the position of Office Coordinator/Magistrate for the District Court with Carol Stocking as her immediate supervisor on or around July 28, 2014 and neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

33.    After being in this position for several months, in December, 2014, Plaintiff applied for a position as Defendant Stanton's Judicial Assistant. She was hired into this position effective January 20, 2015. She was initially under the supervision of Diane Conklin and Defendant Stanton as Department Head.

**ANSWER:**

In answer to Paragraph 33, Defendants admit that Plaintiff applied for the position as Defendant Stanton's Judicial Assistant, and that this application was in December of 2014. Defendants admit that Plaintiff was hired into this position effective January 20, 2015. Defendants further admit that the Court Administrator at the time was Diane Conklin, and that Defendant Stanton was the Family and Probate Court Judge to whom Plaintiff reported. See Exhibit A. Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

34.    Shortly after Plaintiff took this position, Ms. Conklin was replaced as Family Court Administrator by Defendant Randall, sometime in the spring of 2015.

**ANSWER:**

In answer to Paragraph 34, Defendants admit that Ms. Conklin voluntarily left her employment as Court Administrator and that Defendant Randall was hired in the spring of 2015.

35.    Throughout the previous 13 years of employment, Plaintiff always received her requested accommodations for her disabilities, of occasional leave, and a flexible schedule for appointments and to otherwise accommodate the symptoms of her disabilities.

**ANSWER:**

In answer to Paragraph 35, Defendants admit that Plaintiff's file with the Grand Traverse County Human Resources indicates that she was provided Family Medical Leave and Short Term Disability as supported by medical documentation. Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

36.     After Randall arrived, these accommodations were met with hostility. On July 16, 2015, Defendant Randall, the Family Court Administrator (along with Amanda Flowers, the Probate Register), provided Plaintiff with a "counseling memo" regarding "attendance problems." The memo included what appeared to be examples of deficient attendance.

**ANSWER:**

In answer to Paragraph 36, Defendants admit that Plaintiff was provided a counseling memo regarding attendance problems, and that this counseling memo was issued on July 16, 2015.  Defendants affirmatively state that the counseling memo speaks for itself, and must be read in context and in its entirety.  Defendants deny all remaining allegations for the reason that they are untrue.

37.     The examples provided included sick days, doctor appointments, days worked through the lunch hour (i.e. working an extra hour during the work day), coming in early at 7 AM, working from home, and coming to work at 8:15 AM instead of 8:00 AM.

**ANSWER:**

In answer to Paragraph 37, Defendants deny the allegations for the reason that they are untrue as stated and again state that the memo must be read in its entirety, and in context with the applicable court policies.

38.     With this memo, Plaintiff felt she was singled out due to her medical condition, and the objective evidence supports that conclusion, given the inclusion of sick days and doctor appointments in the counseling memo.

**ANSWER:**

In answer to Paragraph 38, Defendants neither admit nor deny Plaintiff's allegations regarding how she felt for lack of knowledge or information sufficient upon which to form a

belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.  Defendants deny all remaining allegations for the reason that they are untrue.

39.     The memo stated that "expected performance" would be for Ms. Kaley-Wolfe to work from 8 AM – 5 PM, Monday through Friday; not be tardy *(sic)* more than three times a month; and complete a "Flex Time Request Form" every time "flex time may be accrued," and that working through lunch would not be considered flex time; and notify Defendant Randall of sick time prior to the start of a work day.

**ANSWER:**

In answer to Paragraph 39, Defendants admit that Plaintiff has stated a portion of the memo.  Defendants deny that this stated portion of the memo accurately reflects the content and meaning for the reason that these allegations are untrue as stated. Defendants again affirmatively state that the memo, read in its entirety, speaks for itself.

40.     The memo purported to calculate Ms. Kaley-Wolfe's flex time balance and concluded that over the previous nearly half-year, she "owed" 6.75 hours to the court. This did not include approximately ten days that Defendant Randall noted where Ms. Kaley-Wolfe worked through lunch, but was not given credit for the hour worked under Randall's definition of "flex time." With that time included, Ms. Kaley-Wolfe more than met her hours.

**ANSWER:**

In answer to Paragraph 40, Defendants admit that the memo states that Plaintiff had 6.75 hours owed to the court through July 10, 2015 and deny all remaining allegations for the reason that they are untrue.  In further answer, to Paragraph 40, Defendants affirmatively state that Plaintiff was expected to abide by the flex time accrual policy in effect at the time attached hereto as Exhibit B.

41.     For the previous 13 years, Plaintiff was always provided "flex time" as long as she worked her allotment of full time hours, and other employees were provided flex time, and the ability to accrue flex time by working through lunch, without penalty or threats to their employment.

**<u>ANSWER:</u>**

In answer to Paragraph 41, Defendants neither admit nor deny Plaintiff's allegations related to how she was treated when working in different positions for different courts for lack of knowledge or information sufficient upon which to form a belief as to the truth of these allegations.  Defendants affirmatively state that Plaintiff, and all other employees, working for the Probate and Family Court were expected to abide by the flex time policies in effect. Defendants further affirmatively state that, at no time, did Plaintiff request "flex time" to accommodate a stated medical disability.

42.     Plaintiff also explained to Defendants that she didn't always punch in, as was her custom, instead going straight to her office. Nonetheless, in order to appease her employers, she apologized for these attendance "issues" after being given this counseling memo.

**<u>ANSWER:</u>**

In answer to Paragraph 42, Defendants deny that Plaintiff has accurately characterized the content of her conversation related to the July 16, 2015 counseling mem for the reason that it is untrue as stated.  Defendants further state that Plaintiff did not "punch in," and this was not required by any other staff.  Defendants affirmatively state that Plaintiff did acknowledge her attendance problems and commented: "I apologize for my behavior and it will <u>not</u> happen again."

43.     Approximately 30 days after the counseling memo, Randall informed Ms. Kaley-Wolfe to compliment her on being compliant with attendance issues.

**ANSWER:**

In answer to Paragraph 43, Defendants deny the allegations contained therein for the reason that they are untrue.

44.    Around August, 2015, and on top of her many other previous medical issues and disabilities, Ms. Kaley-Wolfe received a new diagnosis of breast cancer ("malignant neoplasm of unspecified site of left breast"). Surgery commenced to remove the malignancy.

**ANSWER:**

In answer to Paragraph 44, Defendants neither admit nor deny the allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

45.    On October 22, 2015, Ms. Kaley-Wolfe sought short term disability and FMLA for the purpose of having a unilateral mastectomy of her left breast, with reconstructive surgery. Her applications for STD and FMLA were approved, with an expected return to work date of December 21, 2015.

**ANSWER:**

In answer to Paragraph 45, Defendants admit, on information and belief, that Plaintiff applied for short term disability and Family Medical Leave on October 23, 2015 with expected absence from November 9, 2015 through December 21, 2015.  Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

46.    Upon notifying Defendant Stanton, the Judge told Plaintiff that she should have both breasts "cut off," as they would "only be in the way" when she got older.

**ANSWER:**

In answer to Paragraph 46, Defendant Stanton admits that she had conversations with Plaintiff, which were initiated by Plaintiff, regarding Plaintiff's diagnosis and potential treatment choices to be made by Plaintiff after conferring with her physician. These discussions included discussions of chemotherapy, radiation therapy, prophylactic bilateral mastectomies with implants and lumpectomies.   Defendant Stanton admits that she may also have made the statement that they would be in the way when Plaintiff got older.  Defendant Stanton denies that this was the only subject of the conversation and affirmatively states that the reference to the two statements, standing alone, mischaracterizes the conversation.  Defendant Stanton denies all remaining allegations contained therein for the reason that they are untrue. Defendants Randall and Stocking neither admit nor deny the allegations contained therein for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

47.     By way of background and context, Judge Stanton is a registered nurse, but paradoxically expresses little tolerance for sickness and disease. For example, when a prosecutor requested an adjournment because a witness was not available for health reasons, Judge Stanton pressed the prosecutor on the specific health issue, and opined that the witness was a "wimp" because he wouldn't be ready to testify two weeks after open heart surgery.

**ANSWER:**

In answer to Paragraph 47, Defendant Stanton denies that she is a registered nurse. Defendant Stanton states that she was a registered nurse from 1978 through 1992.  Defendant Stanton admits that she may have stated in jest that a witness was a "wimp."   Defendant Stanton denies that Plaintiff has accurately characterized the content of that conversation for the reason that it is untrue as stated.  Defendant Stanton denies all remaining allegations for

the reason that they are untrue.  Defendants Stocking and Randall neither admit nor deny the allegations contained within this Paragraph for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

48.    She also provided unsolicited medical advice and opinions about employees' health problems, not just the Plaintiff. The Judge once told another employee with a medical issue who was planning to take leave, "Six weeks off? You should come back in two."

**ANSWER:**

In answer to Paragraph 48, Defendant Stanton denies the allegation that she provides unsolicited medical advice and opinions about employees' health problems for the reason that this allegation is untrue.  Defendant Stanton neither admits nor denies Plaintiff's allegation regarding the stated conversation pertaining to an employee wanting to plan to take sick leave time for the reason that Judge Stanton does not recall such a conversation as stated and thereby leaves Plaintiff to her proofs.  Defendants Stocking and Randall neither admit nor deny the allegations contained therein for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

49.    Despite Judge Stanton's opinion to Plaintiff that she should have both breasts "cut off," Ms. Kaley-Wolfe instead followed the advice of her physicians, and had surgery on the left breast only. She eventually returned to work, as approved by her physician, on December 21, 2015, without restrictions.

**ANSWER:**

In answer to Paragraph 49, Defendants admit on information and belief that Plaintiff was off work for surgery from November 9, 2015 through December 21, 2015 at which time she returned without restrictions.  Defendant Stanton denies Plaintiff's characterization of her conversation with Plaintiff and again affirmatively states that the conversation, which was

initiated by Plaintiff, was regarding Plaintiff's options which included a bilateral mastectomy. Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

50.     In the spring of 2016, Ms. Kaley-Wolfe had followup surgery to complete reconstruction of her left breast, and for reconstructive/reductive surgery on her right breast so that it would "match" the left. She went on approved FMLA leave, supported by her physician, on May 6, 2016, through June 27, 2016.

**ANSWER:**

In answer to Paragraph 50, Defendants deny the allegations as untrue as stated and admit, upon information and belief, that Plaintiff was on approved FMLA leave from May 6, 2016 through June 26, and returning to work on June 27, 2016.  Defendants neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

51.     Upon giving Defendant Stanton notice of this new leave, the Judge expressed surprise and disapproval that Ms. Kaley-Wolfe was again having surgery, as well as criticizing Plaintiff's choice of hospitals.

**ANSWER:**

In answer to Paragraph 51, Defendant Stanton denies the allegations contained therein for the reason that they are untrue and mischaracterize the conversation between Judge Stanton and Ms. Kaley-Wolfe.  Defendant Stanton admits that she did have a discussion with Plaintiff, which was initiated by Plaintiff, regarding her choice of hospitals and denies Plaintiff's characterization of Plaintiff's choice of hospital as "criticism" for the reason that this allegation is untrue.  In answer to Paragraph 51 Defendants Stocking and Randall neither admit nor deny

the allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

52.     At no time did Defendants Stanton, Randall or Stocking ever express any sympathy or concern for Plaintiff's unfortunate medical issues.

**ANSWER:**

In answer to Paragraph 52, Defendants deny the allegations contained therein for the reason that they are untrue.

53.     After six weeks off due to her cancer and related post-cancer surgery, Ms. Kaley-Wolfe was unceremoniously fired on the very day she returned to work, within minutes of resuming duties. She was called into a meeting by Defendant Randall and given a memo, dated June 27, 2016, from Defendants Stanton, Randall, and Stocking.

**ANSWER:**

In answer to Paragraph 53, Defendants admit that Plaintiff's employment was terminated on June 27, 2016 for the reason stated in the termination memo.  Defendants deny Plaintiff's remaining allegations for the reason that they are untrue.  Defendants affirmatively state that Plaintiff was not terminated because of a medical condition, or because she took time off work for surgery, and further affirmatively state that Plaintiff at no time requested accommodation to her schedule for purposes of accommodation of a medical disability.

54.     The memo cited attendance problems and listed allegedly deficient days of attendance, including "worked until 8:15 PM," several instances of earned "comp" time; approved vacation and personal leave time; approved holidays; working through lunch (such as 8/25/15, "in at 9:30 AM; no lunch left 6:15 PM," an 8 hour, 45-minute work day); and sick time taken with advance notice. It was not explained why these issues were considered to be deficiencies.

**ANSWER:**

In answer to Paragraph 54, Defendants admit that the June 27, 2016 memo cites attendance and performance problems.  Defendants deny Plaintiff's allegation that it was not explained why the issues stated were considered to be deficiencies for the reason that this allegation is untrue.  Defendants further affirmatively state that Plaintiff was expected to abide by all applicable policies pertaining to attendance and leave, including the compensation time accrual policy which was adopted by the court on January 28, 2016 and attached hereto as Exhibit C.  Defendants further affirmatively state that Plaintiff's attendance and performance issues set forth in the memorandum were unrelated to her Family Medical Leave time.  Defendants deny Plaintiff's characterization of the memo with quoted portions for the reason that, as stated, these quotes mischaracterize the true content of the job performance review which speaks for itself.  Defendants affirmatively state that Plaintiff was told, many times, that her attendance during normal working hours was an essential part of her function as a Judicial Assistant.

55.    The memo also included and incorporated the July 16, 2015 counseling memo concerning attendance, and included a short paragraph about alleged performance issues in research and drafting, of which Ms. Kaley-Wolfe had no prior notice or warning.

**ANSWER:**

In answer to Paragraph 55, Defendants admit that the July 16, 2015 counseling memo concerning attendance included a paragraph regarding performance issues and research and drafting and deny all remaining allegations for the reason that they are untrue.  Ms. Kaley-Wolfe was previously advised of concerns regarding her job performance regarding memorandums, research and preparation for motions.

56.     Ms. Kaley-Wolfe was illegally fired in contravention of her rights as a disabled employee, who took approved medical leaves, as set forth more fully below.

**ANSWER:**

In answer to Paragraph 56, Defendants deny the allegations contained therein for the reason that they are untrue.

**LEGAL ALLEGATIONS**
**COUNT I**

**VIOLATION OF SECTION 504 OF THE REHABILITATIVE ACT (DISCRIMINATION) –**
**ALL DEFENDANTS IN THEIR OFFICIAL CAPACITY ONLY**

57.     Plaintiff's medical conditions qualify as an actual disability for purposes of Section 504 of the Rehabilitative Act of 1973 (Section 504) in that these conditions substantially limit one or more major life activities. [29 USC § 701, 34 CFR 104.3(j)(1)(i)]

**ANSWER:**

In answer to Paragraph 57, Defendants deny the allegations contained therein for the reason that they are untrue.

58.     The 13th Circuit Court, and Grand Traverse County, were recipients of financial assistance from the United States government.

**ANSWER:**

In answer to Paragraph 58, Defendants do not answer on behalf of Grand Traverse County, which is not a party to this action, and leave Plaintiff to her proofs. Plaintiff has not named the 13th Circuit Court as a Defendant, other than through her official capacity claims as to the Family Court Division. The Family Court Division receives Child Care Funds, through the Department of Health and Human Services which, upon information and belief, Defendants Randall and Stanton, do not believe includes federal funds.  Defendant Stocking denies that the District Court receives any federal funds for the reason that any such allegation is untrue.

Defendants affirmatively state that there were no federal funds received by the Court to fund Plaintiff's employment. Defendants deny that any of the named Defendants received federal funding in either their official or individual capacities and neither admit nor deny all remaining allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

59.     Plaintiff was excluded from participation in, and/or denied the benefits of, her employment, solely because of her disabilities, when Defendants denied her the benefits of, and/or subjected her to discrimination regarding her employment with the Court, culminating in the termination of her employment.

**ANSWER:**

In answer to Paragraph 59, Defendants deny the allegations contained therein for the reason that they are untrue.

60.     Defendants so excluded and discriminated against Plaintiff as described above, under color of state law and in their individual capacities.

**ANSWER:**

In answer to Paragraph 60, Defendants deny the allegations contained therein for the reason that they are untrue.

61.     Plaintiff has been damaged by these actions as described herein and below.

**ANSWER:**

In answer to Paragraph 61, Defendants deny the allegations contained therein for the reason that they are untrue.

**COUNT II**

**VIOLATION OF SECTION 504 OF THE REHABILITATIVE ACT (FAILURE TO ACCOMMODATE)**
**ALL DEFENDANTS IN THEIR OFFICIAL CAPACITY ONLY**

62.     Defendants were adequately informed of Plaintiff's disabilities and requests for accommodation by way of approved leave, sick days, personal days, and/or flex time.

**ANSWER:**

In answer to Paragraph 62, Defendants deny the allegations contained therein for the reason that they are untrue. Defendants further deny that any of the time away from work, or tardiness, for which Plaintiff was disciplined, was time for which Plaintiff had requested accommodation by way of approved leave, sick days, personal days and/or flex time for the reason that any such allegation is untrue.

63.     Defendants had the means to accommodate Plaintiff's disabilities, without undue hardship.

**ANSWER:**

In answer to Paragraph 63, Defendants deny the allegations contained therein for the reason that they are untrue.  See also answer to Paragraph 62 above.

64.     Defendants failed to reasonably accommodate Plaintiff.

**ANSWER:**

In answer to Paragraph 64, Defendants deny the allegations contained therein for the reason that they are untrue.   See also answer to Paragraph 62 above.

65.     Such failure to accommodate has directly and proximately caused Plaintiff great damages, as set forth herein and below.

**ANSWER:**

In answer to Paragraph 65, Defendants deny the allegations contained therein for the

reason that they are untrue.  See answer to Paragraph 62 above.

## COUNT III

## VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
## ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

66.     Plaintiff is a disabled person as defined in the Michigan Persons with Disability Civil Rights Act MCLA 37.1101, *et seq.* [MPWDCRA], because at all relevant times she had a disability that:

a.      Substantially limits one or more of her life activities; and

b.      With or without reasonable accommodations, was unrelated to her ability to perform her job.

**ANSWER:**

In answer to Paragraph 66, Defendants deny the allegations contained therein for the reason that they are untrue.

67.     Plaintiff's disability was recognized by and known to the Defendants, and was one of the factors that contributed to the adverse actions they took against her.

**ANSWER:**

In answer to Paragraph 67, Defendants deny the allegations contained therein for the reason that they are untrue.

68.     These adverse actions, including but not limited to subjecting Plaintiff to discrimination and terminating her employment, constituted discrimination in violation of the MPWDCRA.

**ANSWER:**

In answer to Paragraph 68, Defendants deny the allegations contained therein for the reason that they are untrue.

69.     Such discrimination has damaged Plaintiff as described herein and below.

**ANSWER:**

In answer to Paragraph 69, Defendants deny the allegations contained therein for the reason that they are untrue.

## COUNT IV

### VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (INTERFERENCE) ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

70.     Defendants were employers under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (1994) ["FMLA"].

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss that has been filed with this Court.

71.     Plaintiff was an eligible employee under the FMLA, in that she had a serious health condition and was otherwise entitled to take FMLA leave.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss that has been filed with this Court.

72.     The medical conditions described above constituted a serious health condition.

**ANSWER:**

Defendants do not Answer and rely on the Motion to Dismiss filed with this Court.

73.     Plaintiff gave Defendants appropriate notice of these conditions, and followed up by making requests for leave under the FMLA as described above.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

74.   Defendant interfered with Plaintiff's right to leave by discharging her immediately

upon return from her last FMLA leave.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

75. Plaintiff never had any issues of concern with her FMLA leaves for her serious medical conditions, until being supervised by Defendants.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

76. As a result of Defendants' FMLA interference, Plaintiff was damaged as described herein and below.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

## COUNT V

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION)
## ALL DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

77. Plaintiff engaged in statutorily protected activity by requesting and taking protected leave as defined by the FMLA.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

78. After learning of Plaintiff's protected activity, Defendants discharged Plaintiff by terminating her employment for taking protected leave as defined by the FMLA.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

79. This course of conduct was a willful violation of the FMLA.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

80.     As a result of Defendants' violations of the FMLA, Plaintiff suffered damages as described herein and below.

**ANSWER:**

Defendants do not answer and rely on the Motion to Dismiss filed with this Court.

**DAMAGES**

81.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages exceeding $75,000, as follows:

> a.     *Economic Damages* – lost wages, lost earning opportunity, lost value of benefits, attorney fees, incidental and consequential damages.
>
> b.     *Non-Economic Damages* – mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, harm to professional reputation, and disruption of her peace of mind as a result of Defendants' unlawful conduct, to the extent that any reasonable person would have suffered under like circumstances.

**ANSWER:**

In answer to Paragraph 81, Defendants deny Plaintiff's allegation that they engaged in wrongful conduct causing Plaintiff's damages for the reason that these allegations are untrue. Defendants further deny Plaintiff's allegation regarding entitlement to monetary damages on her FMLA or Rehabilitation Act claims for the reason that such alleged damages are contrary to law, as more specifically identified in this Answer and Affirmative Defenses.  Defendants neither admit nor deny Plaintiff's allegation of economic loss, and non-economic loss for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leaves Plaintiff to her proofs.

82.     Defendants' conduct was willful, without compassion for someone who suffered

serious medical conditions, and arguably cruel and inhumane when they fired her upon return from her second breast cancer surgery.

**ANSWER:**

In answer to Paragraph 82, Defendants deny the allegations contained therein for the reason that they are untrue.

83.     After being fired, Plaintiff has made a good faith effort to mitigate her damages, and has found employment, though not as an attorney and for less compensation and benefits than she had earned with the Court.

**ANSWER:**

In answer to Paragraph 83, Defendants neither admit nor deny the allegations for lack of knowledge or information sufficient upon which to form a belief as to the truth of the allegations and thereby leave Plaintiff to her proofs.

Respectfully submitted,

JOHNSON, ROSATI,
SCHULTZ & JOPPICH, P.C.

s/Laura Amtsbuechler
Attorney for Defendants
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3554
(248) 489-4100
lamtsbuechler@jrsjlaw.com
(P36972)

Dated: 11/28/17

## AFFIRMATIVE DEFENSES

Defendants, through their attorneys, Johnson, Rosati, Schultz & Joppich, P.C., and for their Affirmative Defenses state as follows:

1.     Plaintiff has failed to state a claim upon which relief may be granted.

2.     Plaintiff was not a qualified individual with a disability as defined by the

Rehabilitation Act, or the Michigan Persons with Disabilities Civil Rights Act.

3.     Plaintiff is not entitled to punitive damages on her state law claim as a matter of law.

4.     Plaintiff never sought, or was denied, accommodation for a disability.

5.     The essential functions of Plaintiff's job duties required that she perform her work at the Court, and that she work the regularly scheduled hours of the Judge and other Court Staff.  Therefore, any requested accommodation to allow Plaintiff to work from home, or to work hours other than regular court hours would be unreasonable and an undue burden and hardship.

6.     All actions taken regarding Plaintiff's employment were taken for legitimate, and non-discriminatory or retaliatory business reasons.

7.     All actions regarding Plaintiff's employment would have been taken absent Plaintiff's alleged medical conditions, and even if Plaintiff had not been on Family Medical Leave; the employment actions were not taken because of Plaintiff's Family Medical Leave or medical conditions.

8.     Plaintiff has failed to mitigate her damages.

9.     Plaintiff's claims are barred in whole, or in part, by the applicable statute of limitations.

10.    Plaintiff's Family Medical Leave Act claims against Defendants in their official capacity, are barred by 11th Amendment immunity.

11.    Plaintiff's Family Medical Act Leave Act claims against the individual Defendants are barred for the reason that there is no individual liability for public employers under the FMLA.  See *Mitchell v Chapman*, 343 F3d 811 (6th Circuit 2003) and Defendants' Motion to Dismiss filed concurrently with this Answer.

12.     Plaintiff was not an employee as defined by the Family Medical Leave Act, and therefore has no viable FMLA claim.

13.     Any damages recoverable by Plaintiff on her Rehabilitation Act claims are limited to contract type damages available under Title VI, which does not include emotional distress or punitive damages.

14.     Plaintiff's claim for equitable relief in the form of reinstatement is barred by the doctrines of laches and unclean hands.

15.     Plaintiff's claim for equitable relief in the form of reinstatement fails for failure to establish an ongoing violation of federal law. See *Diaz v Michigan Department of Corrections,* 703 F.3d 956 (2013)

16.     Plaintiff has no standing to assert claims for injunctive or declaratory relief on her Rehabilitation Act claim.

17.     Plaintiff is not entitled to injunctive relief in the form of reinstatement for the reason that her alleged injuries are of the type that can adequately be compensated monetarily.

18.     Defendants are entitled to a set off for any and all collateral sources from which Plaintiff receives recovery.

Respectfully submitted,

JOHNSON, ROSATI,
SCHULTZ & JOPPICH, P.C.

s/Laura Amtsbuechler
Attorney for Defendants
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331-3554
(248) 489-4100
lamtsbuechler@jrsjlaw.com
Dated:  11/28/17                    (P36972)

## RELIANCE UPON JURY DEMAND

Defendants, through their attorneys, Johnson, Rosati, Schultz & Joppich, P.C. hereby rely upon Plaintiff's demand for a trial by jury in the above-entitled cause of action.

Respectfully submitted,

JOHNSON, ROSATI,
SCHULTZ & JOPPICH, P.C.

s/Laura Amtsbuechler
Attorney for Defendants
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3554
(248) 489-4100
lamtsbuechler@jrsjlaw.com
(P36972)

Dated: 11/28/17

PROOF OF SERVICE

The undersigned certifies that the foregoing was served upon all parties to the above cause to each of the attorneys/parties of record herein at their respective addresses disclosed on the pleadings on 11/28/17.

BY: ☐ U.S. Mail          ☐ Telefacsimile
☐ Hand Delivered     ☐ Overnight
courier
☐ Federal Express   ☒ Other: **E-file**

Signature:

s/ Lori A. Gazdag